González Román, Juez Ponente
*639 TEXTO COMPLETO DE LA SENTENCIA
Los doctores Samuel Calderón Sitiriche, Juan José Rodríguez Vélez y Luis Angel Rodríguez Negrón, conjuntamente con sus respectivas esposas y sociedades gananciales a las cuales pertenecen, apelan de una sentencia sumaria que emitió en corte abierta el Tribunal de Primera Instancia, Sala Superior de San Juan, el día 8 de diciembre de 1994. La sentencia se plasmó por escrito el 12 de febrero de 1996 y se notificó con copia del archivo en autos a las partes el día 19 de marzo siguiente. Mediante el referido dictamen el Tribunal declaró con lugar una solicitud de desestimación y/o sentencia sumaria y, en su consecuencia, decretó el archivo y sobreseimiento de una reclamación en daños y perjuicios que presentaron los referidos galenos contra la Junta de Directores de la Asociación de Condominos del Condominio Medical Pavilion, su presidente, la corporación dedicada al negocio de administrar bienes raíces A.A.A. Property Managers, Inc., y contra sus respectivas compañías aseguradoras.
I
El trasfondo procesal del caso que eventualmente dio base al presente recurso se inició con la presentación de la demanda el 2 de mayo de 1994. En la misma se alega que los médicos demandantes, titulares de tres oficinas cada uno en el Condominio Medical Pavilion de donde ejercen sus respectivas especialidades médicas, fueron dejados sin el servicio de energía eléctrica el 18 de marzo de 1994. Estos médicos sostienen que las partes demandadas provocaron que se les despojara de dicho servicio a pesar de que habían acordado que no serían privados de electricidad no empece adeudar ciertas sumas de dinero por concepto de unos atrasos en las cuotas de mantenimiento y/o derramas del referido condominio. Alegaron, además, que las partes habían acordado un plan de pago para que dos de estos médicos pudieran satisfacer sus deudas y, a la misma vez, tuvieran la oportunidad de verificar si las sumas reclamadas eran en efecto las cuantías adeudadas. Alegan que tales compromisos impedían que las partes demandadas interrumpieran el servicio de energía eléctrica en sus oficinas y el hacerlo les causó daños por los ingresos que dejaron de percibir como consecuencia de tener que cancelar varias citas de pacientes, por la pérdida de expectativa de ingresos de clientes que no volvieron a su oficina y los daños a la reputación, angustias mentales y la humillación que les produjo el tener que explicar a otros compañeros médicos con oficinas contiguas, pacientes y amigos la situación antes descrita.
Por entender que no existía controversia de hechos materiales, el 24 de mayo de 1994 la Asociación de Condominos del referido complejo de facilidades médicas presentó una moción de desestimación y/o sentencia sumaria solicitando la desestimación de la acción. En dicha solicitud sostuvo que en reunión celebrada por la asociación de titulares, y a petición de uno de los médicos demandantes, se acordó que se le suspenderían los servicos de agua y/o electricidad a los titulares morosos en satisfacer sus cuotas de mantenimiento. Indicó, además, que para el 1ro. de mayo de 1994 los facultativos médicos demandantes tenían deudas vencidas por concepto de cuotas de mantenimiento y/o derramas que habían sido debidamente aprobadas para la adquisición de una nueva unidad de aire acondicionado para el condominio y que, en vista de que ninguno de los demandantes impugnaron la actuación de la Junta en el Tribunal Superior dentro del término de treinta (30) días que dispone el Artículo 42 de la Ley de Propiedad Horizontal, 31 L.P.R.A. see. 1293 f, procedía la desestimación de la acción. La Asociación de Condominos anejó conjuntamente con su solicitud varias actas levantadas en ocasión de la celebración de asambleas de la Junta de Directores, memorandos, certificaciones y comunicaciones de la Corporación A.A.A. Property Managers, así como de la propia Junta, que acreditan que se les notificó a los doctores demandados sobre las decisiones tomadas por la junta de directores, las sumas de *640 dinero adeudadas por éstos y unas advertencias bastante específicas sobre las consecuencias que ello acarréaríá.
El Tribunal de Primera Instancia acogió, los planteamientos de la Asociación .de Condominos y en su consecuencia desestimó la reclamación de los médicos demandantes. Dicho foro sostuvo que la Asociación de Titulares había aprobado la suspensión del servicio eléctrico a los titulares morosos y que los demandantes adeudaban ciertas sumas por concepto de cuotas de mantenimiento y/o derramas. Concluyó, además, que la acción judicial para impugnar acuerdos o determinaciones de esta índole debían iniciarse dentro de los treinta (30) días siguientes a la fecha en que se toma la decisión por el Consejo de Titulares y que, en vista de que los galenos demandantes habían esperado 228 días desde que fueron notificados de la referida derrama para interponer su acción, procedía la desestimación de la misma.
n
Inconforme con el resultado, los doctores demandantes presentaron ante nos un recurso de apelación mediante el cual interesan la revocación del referido dictamen. En dicho recurso los apelantes indican como único señalamiento de error que el Tribunal sentenciador incidió al declarar con lugar la solicitud de desestimación y/o sentencia sumaria al concluir que su acción estaba dirigida a impugnar una actuación del consejo de titulares del Condominio Medical Pavilion a tenor con las disposiciones de la Ley de Propiedad Horizontal, 31 L.P.R.A. see. 1291 et seq., en lugar de considerarla como una acción para recobrar resarcimiento económico por daños y perjuicios causados como consecuencia de un alegado incumplimiento contractual.
III
Es un principio firmemente establecido en nuestra jurisdicción que cuando los contratantes pactan sobre una materia reglamentada por ley, las disposiciones estatutarias se entienden incorporadas desde el principio al contrato, y no pueden las partes evadir tal reserva del poder soberano del Estado para proteger los intereses vitales de sus habitantes. Así, cuando una persona compra una propiedad sujeta al régimen de propiedad horizontal se entiende que las disposiciones de la Ley de Propiedad Horizontal, supra, gobiernan los acuerdos jurídicos que sobre dicha propiedad tomen sus titulares.
La Ley de Propiedad Horizontal, supra, es el estatuto que ordena y determina los derechos del adquiriente de una propiedad por pisos en nuestra jurisdicción. Esta legislación, al igual que estatutos de similar naturaleza en otros países y jurisdicciones, persigue que en los inmuebles sometidos a un régimen de este tipo exista un orden de convivencia presidido por la idea de la justicia con el fin de asegurar una permanencia en el disfrute de las viviendas o locales de negocio que la componen. Para lograr los propósitos de dicha ley, se ha interpretado que la misma determina que las cuotas de mantenimiento de los elementos comunes son parte integrada permanentemente a la utilidad y valor económico de cada apartamento y no pueden ser ignoradas en la contratación respecto a dichas unidades ni pueden los contratantes acordar términos con efecto último de evadir las responsabilidades económicas que son la vida y esencia del referido régimen. 
La Ley de Propiedad Horizontal, supra, disciplina las relaciones de derecho privado de los adquirientes de una propiedad sometida a este tipo de régimen que otorguen sobre ésta. Es decir, dicho estatuto crea ciertas limitaciones a la autonomía de la voluntad que comúnmente no tendrían si la propiedad sobre la cual contratan no estuviera inscrita bajo dicho régimen. Basta con que un pacto o acuerdo esté prohibido por ley, que sea contrario a ésta, que esté en contradicción con ella para que la autonomía de la voluntad se vea restringida. Por consiguiente el comprador de un bien subordinado a un sistema de esta índole se somete al mismo, con los derechos y obligaciones que su carácter de co-propietario le impone.
Cuando los condominos desatienden su obligación de contribuir proporcionalmente al mantenimiento de los elementos comunes generales se exponen a que el Consejo de Titulares adopte las medidas necesarias para garantizar al resto de los condominos el buen funcionamiento del régimen. El artículo 38-C de la Ley de Propiedad Horizontal, 31 L.P.R.A. sec. 1293b-3, regula lo relativo a los acuerdos que tomará el Consejo de Titulares y provee de la siguiente manera:

"Los acuerdos del Consejo de Titulares se someterán a las siguientes normas:

*641
(a) Cuando en una reunión para tomar un acuerdo, no pudiera obtenerse el quorum por falta de asistencia de los titulares, se procederá a nueva convocatoria con los mismos requisitos que la primera, y en tal reunión constituirán quorum los presentes.

(b) Cuando todos los titulares presentes en una reunión convocada para tomar un acuerdo que requiera unanimidad o el setenta y cinco (75) por ciento de los titulares que a su vez representen el setenta y cinco (75) por ciento de participación en los elementos comunes, adoptasen dicho acuerdo, aquellos que, debidamente citados no hubieran asistido serán notificados de modo fehaciente y detallado del acuerdo adoptado y, si en un plazo de treinta (30) días a contar de dicha notificación no manifestaren en la misma forma su discrepancia, quedarán vinculados por el acuerdo que será ejecutable tan pronto el número correspondiente de titulares manifestaren su conformidad.

(c) Cuando en una reunión convocada para enmendar el Reglamento, no pueda obtenerse la aprobación de las dos terceras (2/3) partes de todos los titulares, aquellos, que debidamente citados, no hubieren asistido, serán notificados de modo fehaciente y detallado del acuerdo adoptado por la mayoría de los presentes, concediéndoseles un plazo de treinta (30) días a contar desde dicha notificación para manifestar en la misma forma su conformidad o discrepancia con el acuerdo tomado. Disponiéndose, que el voto de aquellos titulares que no manifestaren su discrepancia dentro del plazo concedido se contará a favor del acuerdo. Dicho acuerdo será ejecutable tan pronto se obtenga la aprobación de las dos terceras (2/3) partes de los titulares.

(d) Los acuerdos del Consejo se reflejarán en un libro de actas. Las actas contendrán necesariamente el lugar, fecha y hora de la reunión, asuntos propuestos, número de titulares presentes, con expresión de sus nombres y porcentajes de participación que éstos representan, forma en que fue convocada la reunión, texto de las resoluciones adoptadas, los votos a favor y en contra y las explicaciones de votos o declaraciones de que cualquier titular quiera dejar constancia.

(e)Las actas serán firmadas al final de su texto por el Presidente y el Secretario."

Las determinaciones a las que llega el Consejo o Junta de Titulares que afecten a ciertos condominos no pueden dejarse sin efecto o en suspenso en la contratación que éstos efectúen posteriormente. Para poder dejar sin efecto una determinación que acuerda válidamente el Consejo de Titulares debe constituirse una reunión, tal y como lo provee la disposición legal antes transcrita, y que la mayoría de los condominos así lo determine. De lo contrario, para poder dejar sin efecto un acuerdo de dicha índole los condominos afectados tendrían que otorgar un contrato con la mayoría de los propietarios de las oficinas de Medical Pavilion, cosa que no se ha alegado ni tampoco se sustenta por los documentos con que acompañaron su oposición a que se desestime la acción ejercitada.
Ninguno de los documentos utilizados por los médicos demandantes controvierten los hechos materiales sobre el cual gira el presente caso. Consabido es que para derrotar una solicitud de sentencia sumaria nuestro ordenamiento procesal le requiere a la parte opositora presentar contradeclaraciones juradas y contradocumentos que pongan en controversia hechos materiales sobre los cuales se alega que no existe controversia. Dejando a un lado ciertos hechos aducidos en las declaraciones juradas que presentaron los galenos apelantes para oponerse a la desestimación sumaria que indiscutiblemente no les constan de propio y personal conocimiento, se limitaron a indicar en forma generalizada que acordaron unos planes de pago y que no les cortarían el servicio eléctrico en sus oficinas. Ello no es suficiente para evitar que se desestime la acción. Para derrotar la solicitud de sentencia sumaria los condominos demandantes venían obligados a presentar declaraciones juradas o documentos fehacientes que rebatieran las determinaciones de la Asociación de Condominos, estableciendo que dicho organismo les aprobó un plan de pago o ratificando el que alegan se les concedió. Asimismo, refutar las declaraciones y documentos en apoyo de la solicitud de sentencia sumaria, en forma tan detallada y específica como lo hicieron los promoventes, exponiendo aquellos hechos pertinentes que demuestren la existencia de una controversia la cual amerite la celebración de juicio plenario, lo cual no hicieron.
Por otro lado, los demandantes no rebatieron lo declarado bajo juramento por el ejecutivo de cuenta de la *642 A.A.A. Property Management, Inc., quien no representa a la Asociación de Condominos del referido condominio, ni estaba autorizado a dejar sin efecto lo acordado por dicho organismo. Realmente, correspondía a los médicos demandantes refutar lo anterior no mediante declaraciones generalizadas y conclusiones, que no serían admisibles en evidencia, sino replicando lo expuesto acreditando o sustentando sus alegaciones con algún documento del organismo con facultad y autoridad en ley para concederles un plan de pago. El no haber , presentado ningún documento capaz de controvertir lo establecido demuestra que carecen de prueba para demostrar un hecho esencial de su reclamación.
Los médicos demandantes no lograron controvertir:1a-resolución de-la Asociación de Condominos que provee para la suspensión del servicio de energía eléctrica en sus respectivas oficinas. Tampoco controvirtieron la declaración jurada de un empleado de la corporación que se encarga de administrar el Medical Pavilion, ni la del presidente de la Junta de Directores de la Asociación de Condominos de dicho condominio, que establecen que el referido organismo no había delegado poderes para otorgar planes de pago. Aun aceptando como cierto que existe controversia sobre si en efecto se le notificó al Dr. Calderón Sitiriche sobre la suspensión del servicio de energía eléctrica y que un ejecutivo de cuenta de A A. A.-Property Management, Jnc. extendió’.un plan de pago y les aseguró a los médicos apelantes que no se les interrumpiría dicho servicio en sus respectivas oficinas, ello no es suficiente en derecho para derrotar la solicitud de sentencia sumaria. Los aquí apelantes no presentaron prueba para sustentar autorización o delegación de clase alguna que facultara a un empleado que labora en la corporación que se encarga de administrar el referido inmueble a conceder planes de pago a condominos que no cumplen con sus obligaciones, máxime cuando era de conocimiento de ellos la orden de corte de servicio emitida por la Junta de Directores. En vista de ello, no lograron acreditar en forma fehaciente la existencia de un acuerdo válido indispensable por la Junta de Directores para mantener viva la reclamación que ejercitan y capaz de justificar se les brinde el beneficio de la celebración de una vista adjudicativa.
Los condominos demandantes saben, o por lo menos deberían saber, que el acuerdo que alegan haber llevado a cabo no es válido por ser contrario a una determinación expresa del Consejo de Titulares que acordó suspenderles el servicio eléctrico y que, emausenciade una determinación-posterior de dicho cuerpo dejando sin efecto la misma, tenían-que recurrir- al trámite-que establecería-Ley de Propiedad Horizontal, supra, para impugnar la determinación si no estaban de acuerdo con ella. Permitir lo contrario.conllevaría a reconocer a los apelantes la potestad de desarticular la facultad que la ley expresamente le reconoce al Consejo de Titulares de adoptar aquellas medidas necesarias y convenientes que aseguren el disfrute pluralizado de áreas comunes y propendan a la preservación y funcionamiento del régimen.
Los pactos que otorgan los titulares de un inmueble sometido al régimen de propiedad horizontal están sujetos a la reglamentación del Estado. Ello impide que no puedan aplicarse las normas generales de la autonomía individual propias de la contratación civil o mercantil ordinaria cuando contravengan las disposiciones de la Ley de Propiedad Horizontal, supra.
Es por tales motivos que la acción que dichos galenos intentan ejercitar debe ser desestimada. En nuestro ordenamiento jurídico no se puede, interponer una acción judicial para recobrar resarcimiento en daños y perjuicios por el incumplimiento de unos contratos cuyos otorgantes carecían de capacidad para efectuarlos y . que eran contrarios a la ley que gobierna sus derechos, obligaciones y al trámite establecido para hacerlos valer. El Tribunal apelado acertadamente identificó el único mecanismo que tenían los demandantes a su alcance capaz de proveerles un remedio comparable o de similar naturaleza al solicitado en la reclamación ejercitada. Sin embargo, como bien concluye el ilustrado foro, no se cumplió con los términos que establece el mismo. 
IV
Por los fundamentos antes expuestos se confirma la sentencia apelada.